DONALD PENN *et al.*, Plaintiffs-Appellants, v. BECKY GERIG *et al.*, Defendants (Roger A. Heerdt *et al.*, Defendants-Appellees).

Fourth District   No. 4—01—0196

Opinion filed October 4, 2002.

Jack C. Vieley, of Bloomington, for appellants.

Thomas J. Arkell, of Dunn, Stanczak, Willard & Arkell, of Bloomington, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

After discovering certain defects in their recently purchased home, plaintiff home buyers filed a cause of action against defendant home sellers. Count III of plaintiffs' complaint alleged noncompliance with the Residential Real Property Disclosure Act (Act) (765 ILCS 77/1 through 99 (West 1996)) and count X alleged common-law fraud. The trial court dismissed count III with prejudice, due to the running of the one-year statute of limitations. 765 ILCS 77/60 (West 1996). On plaintiffs' motion, the trial court also dismissed count X without prejudice. The trial court then granted defendants' motion for sanctions and ordered plaintiffs to reimburse defendants $4,330 for attorney fees. Plaintiffs appeal the trial court's order dismissing count III with prejudice and the order granting defendants' motion for sanctions. We affirm.

## I. BACKGROUND

In the fall of 1997, defendants, Roger and Denise Heerdt, listed their Bloomington, Illinois, home for sale with a local realtor. On September 8, 1997, defendants completed a residential real property disclosure report in accordance with the Act. 765 ILCS 77/35 (West 1996). Defendants disclosed they were aware of "material defects in the basement or foundation (including cracks or bulges)." Defendants further explained their answer in the appropriate blank on the disclosure form and stated: "crack in foundation on south side of house" and "small settling cracks on walls throughout."

Around October 17, 1997, plaintiffs, Donald and Norma Penn, entered into negotiations with defendants for the purchase of defendants' home. On October 18, 1997, plaintiffs signed a purchase agreement and they also signed the disclosure report in which defendants disclosed the aforementioned defects. On November 28, 1997, defendants delivered possession of the residence to plaintiffs. The instrument of conveyance of the residential real property was recorded on December 4, 1997.

On May 16, 2000, plaintiffs filed a nine-count complaint against five parties: Becky Gerig, Hundman Realty, Inc., Thomas Maloney (doing business as Coldwell Banker Heart of America Realty), Roger A. Heerdt, and Denise Heerdt. This appeal involves only those counts of the complaint directed toward the Heerdts. In count III, plaintiffs alleged defendants violated the Act because they "falsely and intentionally filled out the [r]esidential [r]eal [p]roperty [r]eport in an incorrect manner so as to deceive and mislead the [plaintiffs] and others as to the true condition of the home." Plaintiffs complained of undisclosed defects in the home's sewer system, roof, and foundation, which cost them $17,900 to correct.

On June 12, 2000, defendants filed a motion to dismiss count III, alleging it was barred by the applicable one-year statute of limitations. 765 ILCS 77/60 (West 1996). Defendants argued the complaint was filed nearly 2½ years after the accrual of the cause of action as set forth in the Act. Defendants also argue they disclosed all known defects in the disclosure report prior to plaintiffs' purchase of the home, so even if the discovery rule applied to the Act, it would not toll the running of the limitations period in this case. On June 16, the trial court granted plaintiffs' motion for leave to file count X against defendants, alleging common-law fraud. On August 9, 2000, a hearing was held on defendants' motion to dismiss count III. The trial court granted the motion and dismissed count III with prejudice due to the expiration of the statute of limitations.

On August 21, 2000, defendants filed a motion to dismiss count X. On November 16, 2000, plaintiffs filed a motion for voluntary dismissal of count III. On November 22, 2000, the trial court granted defendants' motion to dismiss count X and, noting its earlier dismissal of count III with prejudice, denied plaintiffs' motion for voluntary dismissal of count III. On December 11, the trial court entered an order dismissing, without prejudice, all other counts of plaintiffs' complaint (against other defendants) and withdrawing all pending discovery requests.

On December 21, 2000, plaintiffs filed a notice of appeal of the trial court's order dismissing count III with prejudice. On January 8, 2001, defendants filed a motion for sanctions against plaintiffs and their attorney, Jack Vieley. On February 2, 2001, defendants filed a motion to dismiss plaintiffs' appeal, which was granted by this court on February 16, 2001. The trial court heard defendants' motion for sanctions on February 28, 2001, and took the matter under advisement. On March 6, 2001, the trial court entered an order granting defendants' motion for sanctions, and on March 7, 2001, plaintiffs filed a notice of appeal. On March 20, 2001, the mandate from this court dismissing plaintiffs' December 21, 2000, appeal (*Penn v. Gerig,*

No. 4—00—1081 (February 16, 2001) (unpublished order of dismissal)) was filed with the circuit clerk of McLean County. On March 21, 2001, plaintiffs filed a second-amended notice of appeal. We note defendants have filed with this court a motion for sanctions pursuant to Supreme Court Rule 375 (155 Ill. 2d R. 375(b)), which we will consider as part of this case.

## II. ANALYSIS

On review we consider three issues: (1) whether the discovery rule should be applied to the Residential Real Property Disclosure Act to toll the running of the one-year statute of limitations period until a time the plaintiffs knew or reasonably should have known of their injury; (2) whether the trial court erred in granting defendants' motion for sanctions; and (3) whether this court should grant defendants' motion for sanctions pursuant to Supreme Court Rule 375 (155 Ill. 2d R. 375(b)).

### A. Statute of Limitations

■ Whether the discovery rule is applicable to the Act is an issue of first impression in Illinois. The limitations period set forth in the Act states: "No action for violation of this Act may be commenced later than one year from the earlier of the date of possession, date of occupancy, or date of recording of an instrument of conveyance of the residential real property." 765 ILCS 77/60 (West 1996). The primary rule of statutory construction is to ascertain and give effect to the true intent of the statute. If the statutory language is clear, the language should be given effect without further aids of construction. *Miller v. Bizzell*, 311 Ill. App. 3d 971, 974, 726 N.E.2d 175, 177 (2000).

■ The discovery rule has been applied in many situations to alleviate the sometimes "harsh results" of a literal application of statutes of limitation. In effect, the discovery rule delays the commencement of the relevant statute of limitations until the plaintiff " 'knows or reasonably should know that he has been injured and that his injury was wrongfully caused.' " *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77, 651 N.E.2d 1132, 1135 (1995), quoting *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249, 633 N.E.2d 627, 630-31 (1994). The discovery rule will not be applied given a contrary indication of legislative intent. *Hermitage*, 166 Ill. 2d at 78, 651 N.E.2d at 1135.

■ In this case, the legislature has spoken in clear and unambiguous terms. Only three very specific events will trigger the running of the one-year statute of limitations for causes of action brought under the Act: the date of possession, the date of occupancy, or the date of the recording of an instrument of conveyance. 765 ILCS 77/60 (West

1996). None of these events are related to the *discovery* of potential defects in the home. In fact, we conclude the clear and unambiguous language chosen by the legislature contravenes the application of the discovery rule to the limitations period of the Act. First, the legislature chose a very short, one-year statute of limitations. This period, albeit short, gives the home buyer some protections not previously enjoyed under the somewhat harsh, common-law doctrine of *caveat emptor*, while protecting sellers against potential unlimited liability under the Act if a buyer discovers a defect many years after the purchase of a home. The application of the discovery rule would render meaningless the legislature's choice of the three specific triggering events as well as the short, one-year limitations period.

If we examine the statute further, we also find the legislature not only chose three specific triggering events, it specified the limitations period will begin "from the *earlier* of the date of possession, date of occupancy, or date of recording." (Emphasis added.) 765 ILCS 77/60 (West 1996). According to this clear and unambiguous language, the limitations period may begin to run even *before* the home buyer *occupies* a residential property and has the chance to discover undisclosed defects in the home. For example, if a home buyer delays *occupancy* of a residence for whatever reason, but the deed is recorded prior to occupancy, the statute of limitations begins to run when the deed is recorded. Because the legislature has chosen three specific triggers that provide a bright-line test for determining the *exact date* of the beginning of the limitations period and because these triggers have nothing to do with the home buyer's actual discovery of defects in the home, we find the application of the discovery rule to the Act would be contrary to legislative intent.

The running of the short, one-year limitations period of the Act does not, however, leave a home buyer without a remedy if she feels she has been deceived by a home seller who has fraudulently concealed latent defects. Section 45 of the Act states: "This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction." 765 ILCS 77/45 (West 1996). Therefore, because an aggrieved home buyer has remedies available in addition to those created by the Act, a strict application of the one-year limitations period set forth in the Act does not lead to the "harsh results" that initially prompted courts to create the discovery rule and prompted the legislature to codify the discovery rule in certain statutory causes of action.

Accordingly, we affirm the trial court's December 11, 2000, order dismissing with prejudice count III of plaintiffs' complaint.

## B. Rule 137 Sanctions

To fully understand the issues as they relate to the trial court's order granting defendants' motion for sanctions and defendants' motion for sanctions on appeal, we provide the following time line of the somewhat confusing procedural facts in this case:

June 12, 2000: Defendants filed a motion to dismiss count III of plaintiffs' complaint, alleging the suit was time-barred due to the expiration of the statute of limitations. In this motion, defendants also alleged they were entitled to attorney fees pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137) and *Bizzell*, 311 Ill. App. 3d at 974-75, 726 N.E.2d at 177-78.

August 9, 2000: After a hearing on defendant's motion to dismiss, Judge Freese entered an order dismissing count III of plaintiffs' complaint with prejudice "as a result of the expiration of statute of limitations." Judge Freese also granted plaintiffs' motion for leave to file count X against defendants, alleging common-law fraud. Plaintiffs filed count X on this day, and, without leave of court, requested $300,000 punitive damages. The trial court did not make a ruling as to defendants' request for attorney fees and, according to defendants, the trial court never heard any argument pertaining to "sanctions" at this hearing.

August 21, 2000: Defendants filed a motion to dismiss count X of plaintiffs' complaint, in which they again request the trial court grant them "costs and attorney's fees."

November 22, 2000: After a hearing on defendants' motion to dismiss count X, Judge Freese entered an order granting defendants' motion. The trial court granted plaintiffs leave to replead count X within 35 days. Again, presumably because the trial court granted plaintiffs leave to replead count X and the litigation remained ongoing, the court did not yet consider or rule on the issue of attorney fees or sanctions.

November 16, 2000: Plaintiffs filed a motion to voluntarily dismiss count III of their complaint.

December 11, 2000: Judge Freese denied plaintiffs' request to voluntarily dismiss count III of their complaint because the court had previously dismissed count III *with prejudice*. The trial court granted leave for plaintiffs to file an amended complaint on or before December 27, 2000. Again, the trial court did not enter a ruling as to attorney fees, nor is there any evidence the issue was discussed before Judge Freese.

December 21, 2000: Plaintiffs filed a notice of appeal of the trial court's dismissal of count III with prejudice due to the running of the statute of limitations, docketed No. 4—00—1081.

January 8, 2001: Defendants filed a motion for sanctions, citing numerous instances of alleged sanctionable conduct by plaintiffs and their attorney, Jack Vieley. Defendants again cite Supreme Court Rule 137 (155 Ill. 2d R. 137) and *Bizzell*, 311 Ill. App. 3d at 974-75, 726 N.E.2d at 177-78, in support of their argument and request sanctions of $7,465 for reasonable attorney fees. This motion was assigned to Judge G. Michael Prall.

January 10, 2001: Defendants filed a motion to dismiss plaintiffs' appeal in No. 4—00—1081, alleging the appeal was premature because the trial court never addressed the issue of Rule 137 sanctions. Defendants also alleged plaintiffs failed to file a docketing statement pursuant to Supreme Court Rule 312 (155 Ill. 2d R. 312).

January 29, 2001: Plaintiffs filed a motion for substitution of judge on defendants' motion for sanctions, requesting the reassignment of Judge Freese to hear the motion because he had ruled on all previous material issues in the case. Because Judge Freese was no longer presiding over civil cases in McLean County in January 2001, the case was finally assigned to Judge Elizabeth Robb.

February 16, 2001: This court granted defendants' motion to dismiss plaintiffs' December 21, 2000, appeal. *Penn v. Gerig*, No. 4—00—1081 (February 16, 2001) (unpublished order of dismissal).

February 28, 2001: Hearing on defendants' motion for sanctions is held and Judge Robb takes the case under advisement.

March 6, 2001: Judge Robb entered an order granting defendants' motion for sanctions.

March 7, 2001: Plaintiffs filed a timely notice of appeal herein of Judge Robb's order granting defendants' motion for sanctions and also of the December 11, 2000, order dismissing count III with prejudice, docketed No. 4—01—0196.

March 20, 2001: Mandate from this court in No. 4—00—1081 dismissing plaintiffs' December 21, 2000, appeal is filed with the circuit clerk of McLean County.

On appeal, plaintiffs first argue Judge Robb was without authority to enter an order as to sanctions because Judge Freese previously "had failed to allow the [defendants'] three previous written requests for sanctions and awarded no sanctions." Plaintiffs contend Judge Freese's "refusal" to grant sanctions became the law of the case for all subsequent stages of the suit. We disagree.

■ The law-of-the-case doctrine provides "where an issue has been litigated and decided, a court's unreversed decision on a question of law or fact settles that question for all subsequent stages of the suit." *Norton v. City of Chicago*, 293 Ill. App. 3d 620, 624, 690 N.E.2d 119, 123 (1997). Our review of the record shows the trial court never

entered an order granting or denying Rule 137 sanctions or fees at any stage of the proceedings prior to Judge Robb's March 6, 2001, order. Further, the record fails to show the issue was even *discussed* prior to the February 28, 2001, hearing on defendants' motion for sanctions. The issue was never litigated or ruled upon and a final and appealable order was never entered pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Therefore, plaintiffs' argument is without merit.

Plaintiffs next contend even if defendants' final request for sanctions is not barred by the law-of-the-case doctrine, Judge Robb's March 6, 2001, order granting defendants' motion for sanctions "was void as a matter of law for lack of jurisdiction" because the mandate dismissing plaintiffs' appeal was not filed in the circuit court until March 20, 2001. We again disagree.

■ According to Supreme Court Rules 301 and 304(a) (155 Ill. 2d Rs. 301, 304(a)), appeals may ordinarily be taken only from final orders that dispose of every "claim" raised in an action. *John. G. Phillips & Associates v. Brown*, 197 Ill. 2d 337, 339, 757 N.E.2d 875, 877 (2001), citing *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 465, 563 N.E.2d 459, 463 (1990). The Illinois Supreme Court has held motions for sanctions under Supreme Court Rule 137 (155 Ill. 2d R. 137) are "claims" in the cause of action with which they are connected and they " '*shall be* considered a claim within the same civil action.' (Emphasis added.)" (Emphasis omitted.) *John G. Phillips,* 197 Ill. 2d at 339-40, 757 N.E.2d at 877, quoting 155 Ill. 2d R. 137. The supreme court has also found the circuit court has jurisdiction to act on a timely filed motion for Rule 137 sanctions *even if* such motion is filed *after* a notice of appeal. *John. G. Phillips,* 197 Ill. 2d at 340, 757 N.E.2d at 878. Filing of a timely motion for Rule 137 sanctions renders the prior notice of appeal ineffective as premature. *Cashmore v. Builders Square, Inc.,* 207 Ill. App. 3d 267, 273-74, 565 N.E.2d 703, 707 (1990); see *Niccum v. Botti, Marinaccio, DeSalvo & Tameling, Ltd.,* 182 Ill. 2d 6, 8, 694 N.E.2d 562, 564 (1998).

■ In applying these rules to the present case, it is apparent the circuit court never lost jurisdiction over defendants' timely filed motion for sanctions even though it was filed after plaintiffs' notice of appeal. Therefore, Judge Robb had jurisdiction to consider and rule upon defendants' motion for sanctions prior to both this court's February 16, 2001, dismissal of the appeal and the March 20, 2001, filing of the mandate in the McLean County circuit clerk's office.

Having disposed of these ancillary matters, we now reach the merits of this issue: whether the trial court abused its discretion in granting defendants' motion for sanctions. In her order, Judge Robb

made the following pertinent findings: (1) defendants were entitled to recover their attorney fees pursuant to Supreme Court Rule 137 and *Bizzell*, 311 Ill. App. at 974-75, 726 N.E.2d at 177-78; (2) the filing of count III was not "well grounded in fact and was not warranted by existing law or a good-faith argument for the extension, modification[,] or reversal of existing law" and, therefore, defendants were entitled to recover attorney fees incurred in defense of count III; (3) defendants were also entitled to recover attorney fees incurred in defense of count X because plaintiffs sought to recover compensatory and punitive damages, a request that was stricken on December 11, 2000, because punitive damages are not allowed in cases where a complaint is based, even in part, on a theory of negligence; and (4) the actions of plaintiffs in filing count III and in seeking punitive damages without leave of court in count X "appear to be for purposes of harassment or to needlessly increase the cost of litigation [for] [d]efendants."

█ In *Bizzell*, 311 Ill. App. 3d at 976, 726 N.E.2d at 179, this court found an award of attorney fees pursuant to the Act is within the discretion of the trial court and in determining whether to award attorney fees, the trial court should consider factors consistent with Rule 137. We stated:

"Under Rule 137, sanctions may be granted (1) if *either* party files a pleading or motion that to the best of the attorney's 'knowledge, information, and belief' is not 'well grounded in fact' and is not 'warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law,' or (2) if the pleading or motion is interposed to 'harass or to cause unnecessary delay or needless increase in the cost of litigation.' " (Emphasis in original.) *Bizzell*, 311 Ill. App. 3d at 976, 726 N.E.2d at 179, quoting 155 Ill. 2d R. 137.

The "additional factors" consistent with Rule 137 the trial court must consider include the following: (1) the degree of bad faith by the opposing party; (2) whether an award of fees could deter others from acting under similar circumstances; and (3) the relative merits of the parties' positions. *Bizzell*, 311 Ill. App. 3d at 976-77, 726 N.E.2d at 179, citing *Haskell v. Blumthal*, 204 Ill. App. 3d 596, 601, 561 N.E.2d 1315, 1318 (1990).

█ Our review of Judge Robb's order granting sanctions shows she correctly noted the law and applied the relevant factors in determining whether to award sanctions. While we do not necessarily agree with the trial court that plaintiffs' argument regarding the issue of whether the discovery rule applies to extend the one-year statute of limitations in the Act was not warranted by existing law or a good-faith argument for the extension of existing law, we do agree that for

plaintiffs to argue for the application of the discovery rule *in this case* was entirely contradicted by the facts.

Most, if not all, of the "defects" plaintiffs listed in their complaint related to "structural defects" caused by the home's alleged "moving" and "settling." Defendants *disclosed* material defects in the basement or foundation and provided the following written explanation: "crack in foundation on south side of house" and "small settling cracks on walls throughout." We need not cite legal authority to recognize these defects are indicative of a house that is "moving" and "settling."

The disclosure statement was signed by plaintiffs on October 18, 1997. Therefore, *even if* we were to find the discovery rule applied to the Act, plaintiffs had sufficient notice on this date that structural problems existed in this home and perhaps a closer examination was necessary. See *Regas v. Associated Radiologists, Ltd.*, 230 Ill. App. 3d 959, 964, 595 N.E.2d 1223, 1227 (1992) (purchaser of property cannot " 'shut his eyes to available information and then charge that he has been deceived.' [Citations.]"). The discovery rule is of no help to plaintiffs under the facts of this case because, due to defendants' disclosure of known structural defects, plaintiffs were aware of such defects *prior to* the statutory triggering of the one-year statute of limitations set forth in the Act. The earliest triggering date of the one-year statute of limitations under the Act was November 28, 1997, the date plaintiffs received possession of the premises, and presumably the date of occupancy (the record or plaintiffs' brief does not dictate otherwise). Thus, the Act provided plaintiffs with a longer period in which to file a claim than would the application of the discovery rule.

Plaintiffs also contend they may not be sanctioned for their inclusion of a prayer for punitive damages in count X, because punitive damages are allowed in cases involving common-law fraud. In support of this argument, plaintiffs cite *Home Savings & Loan Ass'n of Joliet v. Schneider*, 108 Ill. 2d 277, 284, 483 N.E.2d 1225, 1228 (1985), which states punitive damages are proper in a fraud action " 'where the false representations are wantonly and designedly made.' [Citation.]" The complaint at issue in *Home Savings* alleged counts of fraud and negligent misrepresentation in the sale of property and the Supreme Court of Illinois found the issue of punitive damages was properly before the jury. However, the court reversed the award of punitive damages based on a faulty jury instruction. *Home Savings*, 108 Ill. 2d at 285-86, 483 N.E.2d at 1228-29.

Plaintiffs overlook the fact *Home Savings* was decided prior to the effective date of section 2—604.1 of the Code of Civil Procedure, which, as of November 25, 1986, requires a party to file a pretrial motion and seek leave of court to include a prayer for relief seeking punitive dam-

ages in all actions "based on negligence." 735 ILCS 5/2—604.1 (West 1996). Section 2—604.1 has been interpreted by this court, in a case in which Jack Vieley was the attorney for the appellant, as applying to an *entire action* and thereby prohibiting a prayer for punitive damages in any *complaint*, based *even in part*, on a theory of negligence. *McCann v. Presswood*, 308 Ill. App. 3d 1068, 1071-72, 721 N.E.2d 811, 814 (1999).

The first two counts of plaintiffs' complaint in the present case are allegations of negligent misrepresentation. Therefore, in keeping with the well-known principle that punitive damages are disfavored by Illinois courts (*McCann*, 308 Ill. App. 3d at 1071, 721 N.E.2d at 814), section 2—604.1 of the Code requiring a party to seek leave of court prior to adding a prayer for punitive damages, and our decision in *McCann*, we find the trial court did not abuse its discretion when it awarded sanctions based, in part, on plaintiffs' conduct in seeking $300,000 in punitive damages in count X of their complaint.

### III. Rule 375 Sanctions

On appeal, defendants have filed a motion for sanctions pursuant Supreme Court Rule 375 (155 Ill. 2d R. 375(b)) and request that this court order plaintiffs to pay defendants' reasonable costs associated with defending the appeal, including reasonable attorney fees. Defendants briefly cite the facts and the reasoning leading to the trial court's order granting sanctions against plaintiffs and they also allege two further instances of plaintiffs' misconduct and disregard for court rules: (1) plaintiffs' failure to file a timely docketing statement as required by Supreme Court Rule 312 (155 Ill. 2d R. 312); and (2) plaintiffs' providing a statement of facts in their appellate brief which is "argumentative" and "inaccurate," which necessitated preparation of another statement of facts in defendants' brief. Based on plaintiffs' conduct and failure at every stage of the proceedings below, defendants argue their bringing of the lawsuit was "without any basis and in bad faith" and the appeal is a "needless extension of a baseless lawsuit." This appeal, defendants contend, shows "Vieley and [p]laintiffs have remained stubbornly litigious and caused defendants unnecessary expense." We agree.

■ Supreme Court Rule 375 states if an appeal is frivolous, not taken in good faith, or taken for a improper purpose such as to harass or to cause unnecessary delay or needless increase in the costs of litigation, an appropriate sanction may be imposed upon any party or the attorney of the party. Rule 375 also states an appeal will be deemed frivolous "where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension,

modification, or reversal of existing law." 155 Ill. 2d R. 375(b). Finally, the rule states an appeal "will be deemed to have been taken *** for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense." 155 Ill. 2d R. 375(b). In determining whether an appeal is frivolous, we use an objective standard: the appeal is frivolous "if it would not have been brought in good faith by a reasonable, prudent attorney." *Dreisilker Electric Motors, Inc. v. Rainbow Electric Co.*, 203 Ill. App. 3d 304, 312, 562 N.E.2d 970, 974 (1990).

■ As to plaintiffs' appeal of the trial court's dismissal of count III with prejudice due to the running of the statute of limitations, we agree with defendants and find the appeal is frivolous. As we discussed earlier, the legal issue of whether the discovery rule is applicable to the Act is weak, but it is not entirely without merit. However, no factual basis warranted the application of the discovery rule in this case *even if* we were to find it applied to the Act. Defendants *disclosed* the existence of structural defects and plaintiffs were aware of such defects *prior* to the statutory triggering of the limitations period. Count III of plaintiffs' complaint was not reasonably well grounded in fact, nor is plaintiffs' appeal of the trial court's dismissal of count III. Therefore, we find a reasonable, prudent attorney acting in good faith would not have sought to extend the lawsuit by pursuing this issue on appeal.

We also find plaintiffs' appeal of the trial court's order granting defendants' motion for sanctions to be frivolous. The trial court's order was based predominantly on the fact that count III was not well grounded in fact and the prayer for punitive damages in count X was filed without leave of court. We have discussed both of these issues at length and have determined plaintiffs' arguments are without merit. Although a party need not be *correct* in his view of the law (*Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 250 Ill. App. 3d 149, 154, 621 N.E.2d 77, 80 (1993)), plaintiffs' arguments on appeal are not objectively reasonable given the lack of a factual basis for count III of the lawsuit and Jack Vieley's involvement in and presumed knowledge of a Fourth District case that was entirely dispositive of the punitive damages issue at the trial level and on appeal.

Accordingly, we grant defendants' motion for sanctions and direct defendants to file a statement of reasonable expenses and attorney fees incurred as a result of this appeal within 14 days. Plaintiffs and their attorneys shall then have seven days to file a response. This court will then file a supplemental opinion determining the amount of the sanctions.

## III. CONCLUSION
We affirm the trial court's judgment.

Affirmed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.