# Illinois Official Reports

## Appellate Court

*Bank of America, N.A. v. Basile*, 2014 IL App (3d) 130204

| | |
|---|---|
| Appellate Court Caption | BANK OF AMERICA, N.A., Plaintiff-Appellee, v. PERRY BASILE, a/k/a Perry A. Basile; ERICA BASILE, a/k/a Erica G. Basile; HARRIS, N.A.; WESLAKE COUNTRY CLUB ASSOCIATION; UNKNOWN OWNERS and NONRECORD CLAIMANTS, Defendants-Appellants. |
| District & No. | Third District<br>Docket No. 3-13-0204 |
| Filed<br>Supplemental<br>opinion filed | May 20, 2014<br><br>October 27, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In view of the procedural delays in an action to foreclose the mortgage on defendants' residence arising from defendants' apparent desire to "stall" the foreclosure and remain in the residence for as long as possible without paying, as they did from 2008, the judgment of foreclosure and sale finally entered in 2012 was affirmed, and pursuant to Supreme Court Rule 375(b), the parties were directed to follow the appellate court's directions for filings preliminary to the appellate court's supplemental opinion determining whether sanctions will be imposed for defendants' appeal and the appropriate amount of those sanctions. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 09-CH-1717; the Hon. Richard J. Siegel, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Theodore Woerthwein (argued) and John Miller, both of Woerthwein & Miller, of Chicago, for appellants.

Robine K. Morrison and Phoebe Coddington (argued), both of Winston & Strawn LLP, of Chicago, for appellee.

Panel

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices O'Brien and Schmidt concurred in the judgment and opinion.

## OPINION

¶ 1    Defendants, Perry Basile and Erica Basile, were sued by plaintiff, Bank of America, N.A., under the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1101 *et seq.* (West 2008)). The circuit court entered judgment of foreclosure and sale in favor of plaintiff. We affirm.

¶ 2    On July 22, 2005, defendants executed a mortgage related to property located at 1758 Autumn Woods Lane in Romeoville. The mortgage secured a $135,800 loan from plaintiff. After defendants failed to make *any* payments on the loan for more than a year, plaintiff filed a complaint to foreclose mortgage. The mortgage and defendants' note were attached to the complaint. Defendants' last payment on the mortgage was *apparently* six years ago (February 2008).

¶ 3    Defendants were personally served with the complaint. Defendants did not, however, file an appearance or respond to the complaint until after the circuit court entered a default judgment against them. Defendants subsequently filed a motion to vacate the default judgment, which the court granted.

¶ 4    On December 16, 2009, defendants filed an answer (the 2009 Answer), which contained three affirmative defenses: (1) plaintiff failed to provide notice of default, (2) plaintiff failed to provide sufficient or accurate copies of the notice of rescission, and (3) defendants exercised their right of rescission on March 6, 2008.

¶ 5    After plaintiff filed a motion to strike the affirmative defenses, defendants withdrew them and requested leave to amend the 2009 Answer or replead the affirmative defenses. The court entered an order withdrawing the affirmative defenses and granted defendants 28 days to replead their answer and/or affirmative defenses.

¶ 6    Defendants filed an amended answer 57 days later on September 30, 2010 (the 2010 Answer). The 2010 Answer again included three affirmative defenses: (1) the mortgage and/or note were altered and/or defaced, making them unenforceable, (2) defendants had exercised their right of rescission on March 6, 2008, so there was no mortgage to enforce, and (3) plaintiff failed to provide sufficient or accurate copies of the notice of rescission.

¶ 7        On October 14, 2010, plaintiff moved to strike defendants' affirmative defenses. At the hearing on plaintiff's motion, defendants requested leave to withdraw and replead their affirmative defenses. At the hearing on plaintiff's motion to strike, plaintiff's counsel informed the court that defendants had agreed to withdraw their affirmative defenses. Based on this agreement, the court granted defendants "leave to withdraw their answer and affirmative defenses" and ordered defendants "to answer or otherwise plead to the complaint within 28 days." Defendants never filed an amended answer.

¶ 8        On December 30, 2011, plaintiff moved for summary judgment allowing it to foreclose and sell the property. Plaintiff attached defendants' 2009 Answer to its motion. In response, defendants argued that the 2010 Answer and affirmative defenses contained therein were still in effect. Additionally, for the first time, defendants raised a new affirmative defense challenging plaintiff's standing to bring the complaint, arguing that Fannie Mae owned the note, not plaintiff.

¶ 9        Defendants also moved for leave to file a motion to dismiss, which seems to contend that both the 2009 and 2010 Answers were still in effect. Defendants argue that they never actually withdrew the 2010 Answer and plaintiff has acknowledged the continued viability of the 2009 Answer by attaching it to its motion for summary judgment. Defendants reasserted their claim that plaintiff lacked standing. Upon hearing argument, the court denied defendants leave to file a motion to dismiss.

¶ 10       The matter proceeded to a hearing on plaintiff's motion for summary judgment. The circuit court heard argument on the issues of (1) whether the 2009 and 2010 Answers and corresponding affirmative defenses were still in effect, and (2) plaintiff's standing. Ultimately, the court granted plaintiff's motion for summary judgment. The court specifically held that no affirmative defenses existed on file.

¶ 11       Defendants filed a motion to reconsider, arguing that the circuit court erred in finding plaintiff had standing. The motion did not challenge the court's finding that no affirmative defenses existed on file.[1] Instead, defendants moved for leave to file a new amended answer and affirmative defenses, which included the exact three affirmative defenses pled in the 2009 Answer plus a fourth affirmative defense challenging standing. After hearing argument, the court denied the motion to reconsider and found the motion for leave to file amended pleadings to be moot.

¶ 12       Pursuant to plaintiff's motion, the court confirmed the sale in foreclosure by order of October 19, 2012. On November 19, 2012, defendants moved for reconsideration of the order confirming sale, arguing that plaintiff did not have standing to foreclose. The court rejected this claim. Defendants appealed.

¶ 13                                              ANALYSIS

¶ 14       At the outset, we note that there is a great deal of confusion with regard to the procedural posture of this case. Upon review of the record, we attribute much of this confusion to defendants, who on several instances failed to comply with the circuit court's imposed

---

[1]It is well established that "[f]ailure to specifically allege error in the post-trial motion waives the issue for review." *Graves v. North Shore Gas Co.*, 98 Ill. App. 3d 964, 969-70 (1981) (citing *Wilson v. Clark*, 84 Ill. 2d 186, 189-90 (1981)). In the interest of relieving the substantial confusion brought about by defendants' actions, or lack thereof, in the present case, we will review all issues argued on appeal.

deadlines. First, defendants, who were personally served, did not take any legal action until a default judgment was entered against them. Second, after the court entered an order withdrawing the 2009 affirmative defenses and granted defendants 28 days to replead their answer and/or affirmative defenses, defendants did not file an amended answer until 57 days later. Lastly, and most significantly, after the court granted defendants' request for "leave to withdraw their [2010] answer and [2010] affirmative defenses" and ordered defendants "to answer or otherwise plead to the complaint within 28 days," defendants did nothing for over a year. Only after plaintiff filed its motion for summary judgment did defendants choose to act by moving for leave to file a motion to dismiss, whereby they confusingly argued that both the 2009 and 2010 Answers were still in effect.

¶ 15    Defendants now argue that the circuit court erred in: (1) determining defendants did not have any affirmative defenses on file at the time plaintiff's motion for summary judgment was argued, (2) denying defendants' motion to file an amended answer and affirmative defenses after summary judgment was entered, and (3) refusing to adjudicate defendants' rescission claim. We examine each of these three issues with the above facts in mind. We also consider (4) *sua sponte* sanctions.

¶ 16                              I. Affirmative Defenses

¶ 17    First, defendants argue the circuit court erred in determining defendants did not have any affirmative defenses on file at the time plaintiff's motion for summary judgment was argued. Specifically, defendants contend that the affirmative defenses contained within the 2010 Answer were still before the court because defendants never actually withdrew the affirmative defenses. Instead, defendants only received leave to withdraw. Stated another way, defendants argue that they were granted permission to withdraw, but never acted upon that permission. Because the facts as to this issue are uncontested, our review is *de novo*. *People v. Chapman*, 194 Ill. 2d 186, 208 (2000).

¶ 18    Defendants clearly communicated their intent to withdraw the affirmative defenses contained within the 2010 Answer. This intent is established by the fact that defendants filed a motion for leave to withdraw said affirmative defenses. The transcript of the proceedings on plaintiff's motion to strike also confirms defendants' intent. Plaintiff's counsel stated that the case was "up on plaintiff's motion to strike defendants' affirmative defenses. Defendants agreed to withdraw the affirmative defenses, and [defendants'] counsel is going to need 28 days to answer or otherwise plead." Defendants raised no objection to this recitation of the parties' agreement. Upon review, we also find it significant that the parties came to this agreement at the hearing on plaintiff's motion to strike defendants' affirmative defenses. We view defendants' agreement as a tacit stipulation to plaintiff's motion to strike. Based on this agreement/stipulation, the court granted defendants' request to withdraw. At that point, the affirmative defenses contained within the 2010 Answer were no longer before the court.

¶ 19    The fact that defendants did not actually replead has no bearing on the defendants' agreement/stipulation to withdraw or strike. Defendants remained silent for over a year, failing to replead within 28 days as ordered by the court. Defendants attempt to justify this silence by focusing on the isolated term "leave." They would have us find that an affirmative defense is not *actually* withdrawn until a new affirmative defense is filed. Such a proposition not only defies logic, but will result in the exact procedural confusion that has occurred in this case. Thus, we hold that where a party affirmatively agrees to withdraw his/her affirmative defenses

at a hearing on the opposing party's motion to strike said affirmative defenses, the affirmative defenses will be deemed to have been withdrawn upon entry of a court order granting leave to withdraw and/or replead. Withdrawal is not dependent upon the pleading of a new affirmative defense.

¶ 20    Defendants bring three alternative arguments in an effort to establish that their affirmative defenses either remained before the circuit court or were somehow revived. First, defendant relies upon the fact that the 2010 Answer was a "verified" pleading. Second, defendants claim that plaintiff's act of attaching the 2009 Answer to its motion for summary judgment somehow revived the affirmative defenses contained therein. Third, defendants argue that their response to plaintiff's motion for summary judgment and/or the corresponding attached affidavits revived the previously withdrawn affirmative defenses. All three of these claims lack merit.

¶ 21    Defendants' reliance upon the fact that the 2010 Answer is a "verified" pleading is misplaced. They argue that because the 2010 Answer was "verified," the affirmative defenses contained within remain before the court indefinitely. Allegations in verified pleadings remain part of the record, even after those pleadings have been subsequently withdrawn or amended, but only to the extent they are deemed to be admissions of fact. *Winnetka Bank v. Mandas*, 202 Ill. App. 3d 373, 397 (1990). Allegations of legal conclusions or admissions of law do not remain part of the record after withdrawal or amendment. *Winnetka Bank*, 202 Ill. App. 3d at 397. Here, we are not dealing with admissions of fact. Instead, we are dealing with affirmative defenses which must be pled (or repled) so they appear as part of the answer. 735 ILCS 5/2-613(d) (West 2010). Defendants failed to do this in the instant case.

¶ 22    We also reject defendants' claim that plaintiff's act of attaching the 2009 Answer to its motion for summary judgment somehow revived the affirmative defenses contained therein. The affirmative defenses in the 2009 Answer were withdrawn and therefore were no longer before the court. Even if we were to accept plaintiff's proposition that defendants never withdrew the 2009 Answer, but only withdrew the contained affirmative defenses, the new answer that defendants filed in 2010 superseded the 2009 Answer. At that point, the 2010 Answer was the operative pleading, along with the affirmative defenses contained therein. This pleading was then voluntarily withdrawn (noting the circuit court's order granting defendants "leave to withdraw their answer and affirmative defenses"). At that point, defendants did not have any answer or affirmative defenses before the court. Significantly, defendants were afforded the opportunity to replead their answer and/or affirmative defenses (noting the circuit court's order allowing defendants 28 days "to answer or otherwise plead to the complaint"). Defendants failed to do so. Plaintiff's subsequent act of attaching a *nonoperative* pleading to its motion for summary judgment does not excuse defendants' failure to replead. An affirmative defense must be specifically pled. 735 ILCS 5/2-613(d) (West 2010).

¶ 23    We also reject defendants' argument that their response to plaintiff's motion for summary judgment and/or their corresponding attached affidavits revived the previously withdrawn affirmative defenses. Defendants base this belief upon the fact that the response and affidavits referenced the previously raised affirmative defenses.[2] In support, defendants call our attention to the fact that Illinois law permits a defendant to file a motion for summary judgment

---

[2]In discussing this particular argument on appeal, defendants only reference their previously raised affirmative defenses, not their standing issue, which they raised for the first time in their response.

even before an answer is filed, and an affirmative defense may be raised on the motion for summary judgment even though it was not raised in the answer. Defendants rely solely upon two cases in support of this rule (*Costello v. Illinois Farmers Insurance Co.*, 263 Ill. App. 3d 1052, 1059 (1993), and *Romero v. Ciskowski*, 137 Ill. App. 3d 529, 533 (1985)). We find both cases distinguishable. We also find the above rule inapplicable in the instant case.

¶ 24    First, we note defendants never moved for summary judgment in the instant case. Second, and more importantly, the present matter does not involve a scenario where defendants are attempting to raise an affirmative defense for the first time. Unlike the present case, defendants' cited cases and the above rule do not contemplate or involve scenarios where the defendant voluntarily withdrew affirmative defenses and then subsequently failed to replead in violation of a court order. The cited cases and above rule merely stand for the proposition that a defendant does not need to file an answer before raising an affirmative defense. Instead, the defendant can raise her affirmative defense for the first time in a motion for summary judgment. The instant case does not present us with such a scenario.

¶ 25    Here, defendants filed two previous answers, both of which included affirmative defenses. Defendants voluntarily withdrew both answers and all corresponding affirmative defenses.[3] After the second withdrawal, defendants failed to comply with the circuit court's order allowing them 28 days to replead. In light of the totality of the facts and circumstances, we hold defendants' failure to replead constituted a knowing and intelligent waiver of any affirmative defense. Defendants' subsequent response and/or attached affidavits do not change this conclusion. Accordingly, we find the circuit court was correct when it held that there were no affirmative defenses before the court at the time of plaintiff's summary judgment hearing.

¶ 26                            II. Amended Answer

¶ 27    Second, defendants argue that the circuit court erred in denying their motion to file an amended answer and affirmative defenses after summary judgment was entered. Defendants explain that the denied amended answer would have "pled the allegations raised in the response to plaintiff's motion [for summary judgment] and [those] previously raised in the[ir] initial answer."

¶ 28    Section 2-1005(g) of the Code of Civil Procedure (the Code) expressly provides, in pertinent part, that "after the entry of a summary judgment, the court shall permit pleadings to be amended *upon just and reasonable terms*." (Emphasis added.) 735 ILCS 5/2-1005(g) (West 2010). The decision to grant leave to file an amended answer or amended affirmative defense rests within the sound discretion of the trial court and such a decision will not be disturbed absent an abuse of discretion. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). See also *Champaign National Bank v. Landers Seed Co.*, 194 Ill. App. 3d 1019, 1027-28 (1990) (no abuse of discretion to deny the defendants' request to file a third affirmative defense after a deadline in a scheduling order).

¶ 29    "In order to determine whether the trial court has abused its discretion, we must look at four factors ***. These factors are: (1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether

_____

[3]As discussed above, even if defendants did not withdraw the 2009 Answer it was superseded by the 2010 Answer.

- 6 -

previous opportunities to amend the pleading could be identified. [Citation.]" *Loyola Academy*, 146 Ill. 2d at 273.

¶ 30　　　Defendants argue that all four of the above factors are met. We disagree. Upon review, we find defendants fail to establish any of the four factors. First, we note that we do not have a defective pleading; we have no pleading. Defendants withdrew all of their pleadings and then subsequently failed to replead. Second, we believe plaintiff would be prejudiced by the proposed amendment. In support, we note the procedural history in this case whereby defendants have continually disregarded the circuit court's imposed deadlines. Defendants' actions, or lack thereof, have not only dragged this matter out beyond what is necessary, but also created a great deal of unnecessary procedural confusion in this case. This conclusion dovetails into the third and fourth factors. Defendants' proposed amendment is not timely. In fact, it is over a year late. Finally, we note that defendants were previously allowed to vacate the default judgment entered against them and subsequently afforded two opportunities to replead. While defendants failed to comply with the 28-day deadline imposed with respect to the first opportunity to replead, they did ultimately replead. Apparently, the circuit court excused defendants' lack of timeliness with respect to this particular instance. As to the second opportunity, however, defendants simply did not replead. Defendants now seek a third opportunity to replead. In light of all these facts, we hold the circuit court did not abuse its discretion in denying defendants' motion to file an amended answer and affirmative defenses after summary judgment was entered.

¶ 31　　　　　　　　　　　　　　　III. Rescission

¶ 32　　　Finally, defendants argue that the circuit court erred in refusing to adjudicate defendants' rescission claim. Defendants incorrectly believe that a claim of rescission is not an affirmative defense, but a complete defense to foreclosure. Thus, defendants apparently conclude that they can raise a claim of rescission at any time and without restriction. Curiously, plaintiff's brief does not address this issue.

¶ 33　　　We find the holding in *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998), instructive. The *Beach* Court explained:

>　　　"The [Truth in Lending] Act provides *** that the borrower's right of rescission 'shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first,' even if the required disclosures have never been made. [Citation.] The [Truth in Lending] Act gives a borrower no express permission to assert the right of rescission as an *affirmative defense* after the expiration of the 3-year period." (Emphasis added.) *Beach*, 523 U.S. at 413.

¶ 34　　　*Beach* makes clear: (1) the right of rescission is an affirmative defense, and (2) section 1635(f) of the Truth in Lending Act (15 U.S.C. § 1635(f) (1994)) is a statute of repose that extinguishes all claims for rescission outside the three-year period. Because rescission is an affirmative defense, defendants were required to specifically plead it. See 735 ILCS 5/2-613(d) (West 2010). As discussed above, defendants have not met this burden.

¶ 35　　　　　　　　　　　　　　　IV. Sanctions

¶ 36　　　At the beginning of our analysis we noted the procedural confusion that defendants' actions, or lack thereof, caused in this case. Coupled with defendants' *apparent* failure to make

any payment on the mortgage since February 2008, we view defendants' behavior as nothing more than stalling tactics. Stated another way, we believe defendants simply wanted to remain in possession of the property, for as long as they possibly could, without having to pay. Defendants used the stalling tactics discussed above, along with bringing this appeal, as a means to attain this goal. This conclusion is readily apparent upon review of the entire record.

¶ 37    Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) allows us to *sua sponte* impose an appropriate sanction upon a party or a party's attorney if:

> "it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose."

¶ 38    "If the reviewing court *initiates* the sanction, it shall require the party or attorney, or both, to show cause why such a sanction should not be imposed before imposing the sanction." (Emphasis added.) Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

¶ 39    The following quotation aptly expresses our view of this appeal:

> "We find that this appeal, viewed as a whole, was frivolous, that it was taken for an improper purpose, and that it was filed specifically to harass and to cause unnecessary delay and needlessly increase the cost of litigation. We choose to impose sanctions for this conduct, finding that cases like this drain valuable resources intended to benefit those who accept the social contract of living under a law-based system of government." *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 88.

¶ 40    "The tactics employed by defendants in this case caused the expenditure of significant time and resources not only by the court below, but by the judges, law clerks, librarians, and clerk's office of this court." *Korzen*, 2013 IL App (1st) 130380, ¶ 92. "By imposing a fine in this case, we seek not only to deter similar conduct by future litigants, but to provide some measure of compensation for the public fisc for that needless expenditure." *Korzen*, 2013 IL App (1st) 130380, ¶ 92. Moreover, we note the expense the public consumer suffers when individuals engage in behavior similar to that of the defendants in the instant case. A mortgagee's failure to satisfy his or her financial obligation along with any resulting costs and fees the mortgagor must expend to recover the property or asset from the mortgagee is almost always shifted back onto the public consumer. While we are sensitive to the fact that mortgagees are occasionally exposed to circumstances that may make them unable to satisfy their obligation, we will not approve or reward the harassing behavior/stalling tactics present in the instant case.

¶ 41    We hold sanctions should be "initiated" against defendants and their attorney for filing a frivolous appeal. See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). We direct plaintiff to file within 14 days a statement of reasonable expenses and attorney fees incurred as a result of this appeal. Defendants and their attorney shall have 14 days to file a response. We strictly admonish both parties to comply with their respective 14-day window. If the bank finds it necessary, it can have seven days to reply. Moreover, we order that defendants' response must "show cause [as to] why such a sanction should not be imposed." See Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). We admonish both parties that the actual issue of rescission or the purported right to rescission is not before us. For the reasons discussed above, rescission was never properly pled and cannot be raised here on appeal. Thus, neither party's upcoming sanction filing should address, in *any* fashion, the substantive issue/purported right of rescission. Plaintiff's statement is limited to a statement of reasonable expenses and attorney fees incurred as a result of this

appeal. Defendants' response is limited to why sanctions should not be imposed. Any deviation from these instructions will expose the violating party to sanctions for violation of this opinion. Upon receiving the party's sanction filings, this court will file a supplemental opinion determining whether sanctions will be imposed and if so, the appropriate amount of the sanction.

¶ 42 Accordingly, the judgment of the circuit court of Will County is affirmed.

¶ 43 Affirmed.

¶ 44 SUPPLEMENTAL OPINION

¶ 45 This matter comes before us on the limited question of whether sanctions should be imposed upon: (1) Perry Basile and Erica Basile, and (2) the law firm of Woerthwein & Miller (collectively referred to herein as defendants).[4] Upon review, we enter sanctions in the total amounts of $10,000 in attorney fees and $3,505 in costs. We apportion those amounts as follows: Perry Basile and Erica Basile in the amount of $5,000 in attorney fees and $1,752.50 in costs; the law firm of Woerthwein & Miller in the amount of $5,000 in attorney fees and $1,752.50 in costs. Neither the Basiles nor the law firm of Woerthwein & Miller will be held liable for any portion of the other's respective share.

¶ 46 FACTS

¶ 47 At the outset, we adopt all facts and holdings found in our previous opinion of May 20, 2014.

¶ 48 In compliance with our directive, Bank of America (BOA) filed a "statement of reasonable attorney fees and costs." BOA requested fees in the amount of $43,104 and costs in the amount of $3,505.

¶ 49 Defendants filed a response as to "why sanctions should not be imposed." Defendants argue that: (1) their arguments on appeal were not frivolous, (2) our reliance on *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, is misplaced, (3) we are barred from considering any of defendants' conduct in the circuit court, (4) the Basiles were not "squatters," and (5) the amount sought by BOA is "excessive." BOA filed a response addressing each of these arguments.

¶ 50 ANALYSIS

¶ 51 Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) allows this court to *sua sponte* respond to a frivolous appeal with the imposition of sanctions, which may include reasonable attorney fees and costs. Rule 375(b) states:

"An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary

---

[4]Woerthwein & Miller represented defendants in the above-entitled matter.

purpose of the appeal or other action is to delay, harass, or cause needless expense." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

¶ 52    Defendants' first argument against sanctions is that their arguments on appeal were not frivolous. We disagree. Defendants attempt to relitigate the merits of their previously raised issues. We briefly reexamine each of the three issues raised on appeal.

¶ 53    Defendants still assert that "the amended answer and affirmative defenses [(2010 Answer)] remained in place until actually pled over." Defendants are incorrect. *Supra* ¶¶ 17-19. To this day, defendants have yet to cite any relevant authority justifying their tortured interpretation of the term "leave." We again emphasize that defendants' voluntary and knowing withdrawal of their 2010 Answer took place at the hearing on BOA's motion to strike defendants' affirmative defenses. *Supra* ¶¶ 18-19. At that point, the 2010 Answer was no longer before the court. *Supra* ¶ 18. Defendants do not dispute the fact that they failed to comply with the circuit court's order allowing them 28 days to replead. Defendants also do not dispute the fact that they did nothing for over a year. Only after BOA filed its motion for summary judgment did defendants move for leave to file a motion to dismiss whereby they confusingly and incorrectly argued that both the 2009 and 2010 Answers were still in effect.

¶ 54    In light of these facts, along with all the other facts discussed in our previous opinion, defendants should have been aware that their appellate arguments regarding their affirmative defenses were not reasonably well grounded in fact and not warranted by existing law. The same applies to defendants' three alternative affirmative defense arguments. *Supra* ¶¶ 20-24. None of these arguments is objectively reasonable when confronted with the facts of the present case and well-established Illinois law.

¶ 55    Defendants also still assert that they "should have been allowed to file a second amended answer and affirmative defenses after the motion for summary judgment was filed." Defendants are incorrect. *Supra* ¶¶ 27-30.

¶ 56    We emphasize that defendants cannot establish even one of the four factors discussed in *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992). *Supra* ¶ 30. As to the first factor, we simply reject defendants' belief that "lack of a pleading itself could reasonably be characterized as a 'defective' pleading, since the proponent has no chance of success with no pleading just as with a truly faulty pleasing [*sic*]." A defective pleading on file with the court is different than the absence of any pleading at all.

¶ 57    As to the second and third factors, defendants seem to argue that any potential prejudice from their actions, or lack thereof, is cured since BOA had notice of its intent to replead. We disagree. Such a position fosters the following unreasonable scenario: (1) a defendant could simply sit idle while an opposing party motions-up its pleading, (2) then at the hearing defendant could voluntarily agree to withdraw its answer and replead within 28 days, (3) then defendant could choose not to replead and instead wait for over a year, or perhaps longer, until the opposing party acts (in this case bringing a motion for summary judgment), and (4) at that point, defendant could then replead the very same affirmative defenses it previously pled and withdrew on two separate occasions.

¶ 58    The above scenario clogs up the court system and costs the opposing party a substantial sum of money before ever reaching the merits of the original pleading. Faced with the backdrop of this case, we view the above behavior as stalling. Moreover, in determining whether prejudice exists, we consider the totality of the circumstances, viewed from a commonsense perspective. While notice is one factor, it is not the sole factor.

¶ 59        Defendants concede they have failed to prove the fourth factor. In light of these facts, along with all the other facts discussed in our previous opinion, defendants should have been aware that their appellate arguments regarding their amended answer were not reasonably well grounded in fact and not warranted by existing law.

¶ 60        Defendants' final appellate argument–that rescission is not an affirmative defense, but a complete defense to foreclosure–also was not reasonably well grounded in fact and not warranted by existing law. It is very clear that rescission is an affirmative defense that must be specifically pled. *Supra* ¶¶ 33-34.

¶ 61        Defendants' second argument against sanctions is that we mistakenly relied upon *Parkway* in our previous opinion. Defendants allege *Parkway* is different from the instant case because *Parkway* involved "gross procedural errors." Defendants have misread our previous opinion. Here, the initiation of sanction proceedings and our decision that defendants' appeal is frivolous is entirely grounded in the specific facts of this case. Whether the conduct in *Parkway* was worse than the conduct at issue here is of no consequence. The fact remains, both the present appeal and the *Parkway* appeal were frivolous. We merely cited *Parkway* for the purpose of illustrating the effects frivolous appeals have upon the court system and for the proposition that the entry of sanctions deters the filing of such appeals and provides some measure of compensation for the public fisc. Lastly, we note that our sanctioning authority derives from Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994), not the holding in *Parkway*.

¶ 62        Defendants' third argument against sanctions is that we are barred from considering any of defendants' conduct in the circuit court. Defendants have waived this argument as they have failed to include *any* authority (statutory or case law) in support of this proposition. Illinois Supreme Court Rule 341(h) (eff. Feb. 6, 2013) requires the parties to an appeal to provide legal authority for their contentions.

¶ 63        Even if we excused defendants' waiver, however, their argument fails. Initially, we note that it is the conduct and proceedings in the circuit court that should have notified defendants that their appellate arguments lacked any objectively reasonable basis in law. One has to look to the conduct and proceedings below when determining the merit or viability of a potential appellate argument. The conduct and proceedings below are always the context for the appeal. Illinois law supports this concept. For example, the court in *Penn v. Gerig*, 334 Ill. App. 3d 345, 356 (2002), looked at both the proceedings in the circuit court and on appeal when ordering sanctions pursuant to Rule 375(b). Specifically, the court stated:

> "Based on plaintiffs' conduct and failure at every stage of the proceedings below, defendants argue their bringing of the lawsuit was 'without any basis and in bad faith' and the appeal is a 'needless extension of a baseless lawsuit.' This appeal, defendants contend, shows *** [p]laintiffs have remained stubbornly litigious and caused defendants unnecessary expense. We agree." (Internal quotation marks omitted.) *Penn*, 334 Ill. App. 3d at 356.

¶ 64        Likewise, we find that the instant appeal is without any objectively reasonable basis and is a needless extension of a groundless legal defense. The only purpose that was served via the proceedings below and these appellate proceedings is that it caused BOA unnecessary expense and seriously delayed it from obtaining the property in question, while at the same time allowing the Basiles to live on the property without making any mortgage payment for at least five continuous years.

¶ 65    Defendants' fourth argument against sanctions is that the Basiles were not "squatters." We disagree. The basis for the defendants' assertion is that the Basiles agreed to pay BOA a monthly bond payment of $1,250 per month in order to remain in possession during the appeal. Significantly, however, the Basiles paid nothing to BOA from early 2008 until the bond order was entered in April 2013. Thus, the Basiles lived on the property without making any payments for over five years. Such behavior begs the question, if defendants truly intended to exercise their purported right to rescission, why did they continue to remain in possession of the property? Usually when one party intends to void or rescind an agreement they return the consideration that was tendered by the other party. We find it extremely curious that defendants *allegedly* intended to rescind the mortgage, yet continued to remain in possession of the property. Lastly, we note that even though the Basiles were making the monthly bond payment, BOA was still required to expend substantial funds to defend against this frivolous appeal.

¶ 66    Defendants' final argument against sanctions is that the requested sanction amount is excessive. We agree. Upon reviewing the record and all supplemental pleadings, we do not believe the behavior in the instant case justifies attorney fees in the amount of $43,104. Instead, we exercise our discretion and find that defendants' conduct compels fees in the amount of $10,000. In coming to this conclusion, we take into account that the law firm of Woerthwein & Miller claims that "defendants have not been and will not be charged for this appeal." While we find this mitigating to some extent, *pro se* representation does not excuse the bringing of a frivolous appeal. Lastly, we find the behavior in the instant case does justify a full reimbursement ($3,505) of costs.

¶ 67    For the foregoing reasons, we enter sanctions in the total amounts of $10,000 in attorney fees and $3,505 in costs. Perry Basile and Erica Basile are liable in the amount of $5,000 in attorney fees and $1,752.50 in costs. The law firm of Woerthwein & Miller is liable in the amount of $5,000 in attorney fees and $1,752.50 in costs.

¶ 68    Defendants sanctioned.