2025 IL App (1st) 242335-U

SECOND DIVISION
September 23, 2025

No. 1-24-2335

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| SCOTT BUDLOVE, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | Appeal from |
| ) | the Circuit Court |
| RETIREMENT BOARD OF THE COUNTY EMPLOYEES' AND ) | of Cook County |
| OFFICERS'[] ANNUITY AND BENEFIT FUND OF COOK ) | |
| COUNTY; and the individual member[s] of the Retirement Board in ) | 20CH6617 |
| their individual and official capacities, LAWRENCE L. WILSON, as ) | |
| Board President, PATRICK McFADDEN, Board Vice President; and ) | Honorable |
| DIAHANN GOODE, JOHN BLAIR, STEPHEN HUGHES, ) | Eve M. Reilly, |
| BILL KOURUKLIS, JOSEPH NEVIUS, KEVIN OCHALLA, ) | Judge Presiding |
| JAMES M. O'ROURKE, Board Trustees; and WILLIAM MOTTO ) | |
| in his individual and official capacity as Board Hearing Officer, ) | |
| ) | |
| Defendants-Appellees. ) | |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Howse concurred in the judgment.

**O R D E R**

¶ 1    *Held*:   Former county police officer did not show that board clearly erred by denying duty disability benefits, did not show that circuit court should have denied judgment on the pleadings as to due process claims, and forfeited appellate review of breach of fiduciary duty claim.

¶ 2    Scott A. Budlove was on duty as a police officer with the Cook County Sheriff's Police when he was injured in a traffic accident. He settled a temporary total disability claim with his

employer under the Illinois Workers Compensation Act (820 ILCS 305/1 *et seq*. (West 2002) ("IWCA")); and then he was granted a short period of duty disability benefits and four extensions of those benefits by the Retirement Board of the County Employees' and Officers' Annuity Fund of Cook County ("Board"). The Board denied his fifth extension application, however, due to insufficient proof of a duty-related disability. The circuit court rejected his arguments on administrative review. Here upon further review, Budlove contends that he is entitled to the benefits until the Board has medical evidence of his recovery, it misinterpreted the Illinois Pension Code ("Pension Code") (40 ILCS 5/1 *et seq*. (West 2012)), and its key factual conclusions were against the manifest weight of the evidence. He also contends that his due process rights were violated and that the Board members breached fiduciary duties of loyalty, care, and strict statutory compliance.

¶ 3    Budlove began working as a police officer with the Cook County Sheriff's Police in April 1998. His career ended four and a half years later, on October 27, 2002, when his neck, head, upper back, and left eye were injured in an on-duty traffic accident. Budlove, who was 30 at the time, was driving a squad car on southbound I-294 when a tire blew out and his car struck another car and the median barrier. On October 4, 2007, he accepted $51,032 to settle a compensation claim under the IWCA. The settlement contract specified that he was temporarily totally disabled from October 27, 2002, to January 19, 2003, and from February 11, 2003, to November 2, 2006. He applied for duty disability benefits on the same day that he settled the compensation claim, then he moved to Florida and in 2008 he took a full-time job in a different line of work. Under the Pension Code, "[a]ny employee who becomes disabled" in the line of duty "shall have a right to receive a duty disability benefit during any period of such disability for which he receives no

salary." *See* 40 ILCS 5/9-196 (West 2006). On March 5, 2008, the Board granted his application for duty disability benefits from the County Employees' and Officers' Annuity Fund of Cook County ("Fund"). Given that the lump sum which he received in settlement of his worker's compensation claim exceeded 75% of his salary when he was injured, Budlove was not eligible for a payment of money, but he did receive pension credit for that period. *See* 40 ILCS 5/9-159(c) (West 2006).

¶ 4    Budlove submitted a series of applications on September 22, 2008, May 27, 2009, May 8, 2010, and February 11, 2011, to extend the duty disability benefits. The Board granted these short extensions for specific periods of time by sending him letters on March 6, 2009, June 4, 2009, July 1, 2010, and March 3, 2011. These four extension letters were identical with the exception of the dates that they covered and the benefit amounts. The first extension letter, in March 2009, stated:

> "The Board found that you are entitled to an extension of Duty Disability benefits from November 02, 2006 to July 16, 2008 inclusive, or until prior recovery or return to work[,] at the daily rate of $111.52 per day, less Workers' Compensation Award leaving amount to be paid by the Fund at $111.52 per day."

¶ 5    The last benefit extension (the fourth extension) was granted until February 7, 2012, for $111.85 per day.

¶ 6    On February 20, 2012, Budlove submitted the benefit extension application that is at issue. A disability application includes four components: a completed application, an employer verification, an attending physician statement, and a board-appointed physician report. Most of Budlove's 2012 application form was redacted from the record, but he is not disputing the Board's description. According to the Board, his application included multiple indications of a duty

disability beginning in 2001 rather than 2002, that is, there was a discrepancy between the purported year of disability in this application and his five prior applications. The Board also states that Budlove sought benefits beginning on October 27, 2001, indicated that the first day he was unable to work due to the alleged injury was October 30, 2001, and certified that his application was "true and correct." He certified that his disability was severe pain in his neck, head and upper back, and weakness in his arms and hands. The record includes the employer verification statement which indicated that his injury date was October 29, 2001. The statement completed by his attending physician compounded the date discrepancies, when the doctor wrote that a disabling injury occurred on May 27, 2008, *i.e*., many years after the squad car accident, and was continuous to when the doctor's statement was made on January 26, 2012. The county-appointed physician's statement authored by Dr. J. Mankowski, M.D. did not specify an injury date but recommended a period of disability from February 8, 2012, through February 8, 2013.

¶ 7 The Fund asked Budlove to complete a questionnaire regarding his employment and authorize the release of his tax return transcripts for 2008, 2009, 2010, and 2011. He had been working 32 to 40 hours per week for an engineering services firm in Florida.

¶ 8 The Fund next recommended that the Board deny the extension application, given that Budlove was seeking duty disability benefits beyond the disability dates that had been stated in his worker's compensation settlement. At its April 4, 2013, meeting, the Board denied the application and that same day notified him in writing that he was found "ineligible for benefits due to [an] insufficient record to show that the current disability was the result of an injury incurred in the performance of duty."

¶ 9 Budlove requested an administrative hearing in which he contended he was entitled to duty

disability benefits between February 7, 2012, and his 65th birthday. The administrative hearing officer subpoenaed two witnesses to a hearing on August 12, 2019: Budlove's treating physician, Dr. Mohamad I. Saleh, M.D., and the Fund's Director of Member Services, Brent Lewandowski. Budlove's doctor did not respond to the subpoena.

¶ 10    Lewandowski testified, but we cannot summarize his complete testimony because only some of the administrative hearing transcript was included in the record on appeal and it is not in the same sequence as when the Board answered Budlove's complaint for administrative review. Any doubts which arise from an incomplete record are to be construed against the appellant, because the appellant has the burden of ensuring that the record on appeal is complete. *Farris v. Illinois Workers' Compensation Comm'n*, 2014 IL App (4th) 130767WC, ¶ 74 (where the record on appeal did not include the claimant's testimony before the IWCC, the appellate court presumed that the commission properly assessed the claimant's credibility and considered his testimony along with other competent evidence). Budlove's attorney would have realized that the record on appeal was deficient if counsel had done a proper job of describing the administrative hearing in the Statement of Facts section of the opening appellate brief and supporting that description with citation to the record. Supreme Court Rule 341(h)(6) requires that the initial brief "contain the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). The index to the hearing transcript lists four witnesses, but Budlove's Statement of Facts briefly refers to only two of them: Lewandowski and another Fund employee, Gary LeDonne. As the court said in *Trapp*, "While the court is generally appreciative of litigants who are concise in their writing," the rule "is not a license to cherry-pick." *Trapp v. City of*

*Burbank Firefighters' Pension Fund*, 2024 IL App (1st) 231311, ¶ 14. The deficient record and brief significantly delayed but did not entirely frustrate our resolution of the appeal.

¶ 11    In relevant part, Lewandowski said that when the Board voted to deny Budlove's application, it was following its practice at the time to rely on workers' compensation settlements to determine the duration of duty disability benefits. He acknowledged that during that time frame, he was not a Fund employee and was a voting board member employed as an investigator by the sheriff's department. Lewandowski also said he did not have medical evidence showing recovery or any improvement in Budlove's condition.

¶ 12    Dawn D'Amato, a Fund employee for 21 years and currently a disability counselor, testified that the Fund would typically wait for the outcome of the person's application for worker's compensation benefits and then approve or deny duty disability benefits accordingly. If the Illinois Workers' Compensation Commission ("IWCC") made a permanent award, then the Fund would pay until the age of 65. The Cook County Pension Fund Disability Benefits Handbook stated only that the person must first apply for worker's compensation before the Fund would pay benefits, it did not require the person to have received or be receiving worker's compensation in order to receive duty disability.

¶ 13    Gary LeDonne testified that during his 14 years working for the Fund, he had been in his current role as "Director of Benefits Administration" for about a year, and that he previously worked as a senior policy advisor and a senior benefits advisor. In the latter role, he oversaw the disability department. The Fund would rely on the work injury dates specified in a worker's compensation settlement. When handling Budlove's 2012 extension application, LeDonne did not understand why benefits ever had been approved beyond the finite dates in the worker's

compensation settlement and all the information indicated to LeDonne that the application should be denied. LeDonne denied that Dr. Saleh's Attending Physician Statement indicated that Budlove's "current condition" was caused by the 2002 accident. The Fund sent Budlove the employment questionnaire and requested his tax return transcripts in order to better understand his eligibility. Work in a similar field would have been a red flag, but what the research yielded in this instance did not factor into the recommendation that LeDonne made to the Board. His recommendation was based on the worker's compensation and medical information that Budlove provided in the 2012 application. LeDonne did not have information indicating that the duty disability had ceased, but he was not looking for evidence of recovery—he was looking for proof of eligibility. There was just a lack of information indicating Budlove's current disability resulted from a work-related injury.

¶ 14    The fourth witness, Budlove, testified that the Fund required him to periodically reapply for duty disability benefits. Each time the Fund sent his "last check," it would include a new "yellow application." He would complete it and then have to see a county-appointed doctor. He had not received any benefits after February 7, 2012, despite complying with the established process. When he settled his worker's compensation claim, he did not knowingly waive any duty-disability benefits. His worker's compensation settlement specified that his temporary disability ended in 2006, did not indicate that he was permanently disabled, and also said that he was giving up any right to further medical treatment at his employer's expense related to the on-duty injury, even if the condition worsened. Nevertheless, the contract expressly stated that he was applying for duty disability benefits; the agreement was made pursuant to the IWCA rather than the Pension Code; the Fund was not a contracting party; and Budlove was not seeking compensation for further

medical treatment. He could not perform the full unrestricted duties of a police officer because his vision and the range of motion in his neck had been compromised by the work injury. Dr. Saleh became his treating physician in 2008 and Dr. Reheem was his pain management doctor. Budlove had not seen a county-appointed physician since February 2012 because he had not been instructed to see one. The hearing officer sustained an objection to Budlove testifying about the contents of what were purportedly his treatment records, given that Dr. Saleh was not there to lay a foundation, despite being subpoenaed, and that Dr. Reheem had not been subpoenaed. The hearing officer declined Budlove's offer of proof. Budlove was also asked about seeing Dr. Luis G. Figueroa in 2016 for an independent medical examination ("IME") and stated he did so voluntarily and because of a settlement conference during his federal lawsuit against the Fund. The Board objected to Budlove testifying about the contents of Dr. Figueroa's report. The hearing officer sustained the hearsay objection, stating that there was no need for Budlove to paraphrase the report that was one of the joint, stipulated exhibits and that document could speak for itself. Budlove testified that he saw his doctors periodically and that neither they nor any county physician determined that Budlove was capable of returning to work in a full, unrestricted capacity. The job that he had at Windmere Engineering Services when he completed the questionnaire in 2012 and his current job at Leedo Cabinetry did not include physical labor or require him to carry a weapon or deal with physical altercations. At the cabinetry company, he ordered parts, scheduled deliveries, and visited job sites to confirm quality and correct installation. After the accident in 2002, he was assigned light duty in the Fugitive Warrant Section, but that accommodation was capped at 6 months.

¶ 15    After the hearing, the hearing officer noted the inconsistent dates of injury in Budlove's 2012 application form, employer verification form, attending physician's statement, and board-

appointed physician's statement. The hearing officer determined that the documentary evidence and witness testimony in the record did not support Budlove's assertion that his injuries occurred in 2002 during the performance of an act of duty. Furthermore, the record lacked any evaluations by a county-appointed physician after 2012 indicating the disability was ongoing. See 40 ILCS 5/9-158 (West 2016) (requiring a disabled employee who receives duty disability benefits to undergo periodic medical examinations). The hearing officer's recommended opinion was that Budlove failed to meet his burden of proof regarding the Board's denial of his 2012 application for duty disability benefits, and that the Board should affirm its decision to deny benefits.

¶ 16    At its meeting in October 2020, the Board considered the hearing officer's recommendation and concluded that Budlove was ineligible for the benefits he had requested. The Board sent Budlove a letter to that effect and advised him that its action was a final administrative decision.

¶ 17    Budlove filed a three-count complaint in the circuit court in November 2020, seeking administrative review (Count I), claiming that the Board committed due process violations by disregarding its policies, the Illinois Pension Code, 40 ILCS 5/9-156 (West 2018), and other rights (Count II), and asserting that the board members and hearing officer had breached fiduciary duties (Count III). The counts were addressed individually. In November 2021, the court dismissed the fiduciary duty count without prejudice and gave Budlove 28 days to replead if he chose to do so. He never filed an amendment. Two and a half years later, in May 2024, the court affirmed the Board's administrative decision. Finally, in October 2024, the court granted the Board's motion for judgment on the pleadings as to the due process claim and concluded "Case disposed." This appeal followed.

¶ 18    We review the administrative agency's decision rather than the circuit court's decision. *Siwek v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 324 Ill. App. 3d 820, 824 (2001). Judicial review of an administrative agency's decision may extend to all questions of law and fact presented by the entire record before the court. 735 ILCS 5/3-110 (West 2012).

¶ 19    "The standard of review, 'which determines the degree of deference given to the agency's decision,' turns on whether the issue presented is a question of fact, a question of law, or a mixed question of law and fact." *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 471 (2005) (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001)). The administrative agency's factual determinations are treated as *prima facie* true and correct and will stand unless they are contrary to the manifest weight of the evidence. *Kimball Dawson, LLC v. City of Chicago Department of Zoning*, 369 Ill. App. 3d 780, 786 (2006); see also 735 ILCS 5/3-110 (West 2012).

¶ 20    "An administrative agency's factual findings are against the manifest weight of the evidence if no trier of fact could have agreed with the agency or an opposite conclusion than that reached by the agency is clearly evident." *In re Fatima A.*, 2015 IL App (1st) 133258, ¶ 58. The fact that an opposite conclusion is reasonable does not justify reversal of the agency's decision. *Abrahamson v. Department of Professional Regulation*, 153 Ill. 2d 76, 88 (2009). Instead, the appropriate test is whether there is sufficient evidence in the record to support the agency's determination. *Id.* "[B]ecause the weight of the evidence and the credibility of the witnesses are within the province of the [agency], there need only be some competent evidence in the record to support its findings." *Iwanski v. Streamwood Police Pension Board*, 232 Ill. App. 3d 180, 184 (1992).

¶ 21    "The rule that an administrative agency's findings of fact should not be disturbed unless they are against the manifest weight of the evidence does not apply where the question involved is one of law, such as the proper interpretation of a statute." *DiFoggio v. Retirement Board of County Employees Annuity & Benefit Fund of Cook County*, 156 Ill. 2d 377, 380-81 (1993). In that instance, the agency's finding is not binding on the court. *Id.* at 381. "Where there is no question of fact, and the issue is solely one of law, we review the agency's decision *de novo*." *Village of Alsip v. Portincaso*, 2017 IL App (1st) 153167, ¶ 11.

¶ 22    Finally, mixed questions of law and fact are reviewed under the clearly erroneous standard, and a reviewing court finds a decision clearly erroneous when it "is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008).

¶ 23    Because we are addressing mixed questions of law and fact, we proceed under the clearly erroneous standard.

¶ 24    Budlove first contends that it was reversible error for the Board to burden him with proving a duty disability in order to continue receiving duty disability benefits. He reads the last sentence of section 158 of the Pension Code, 40 ILCS 5/9-158 (West 2006), to mean that once he began receiving duty disability benefits, it was the Board's obligation to prove that he had recovered from the injuries that he sustained in 2002 while performing an act of duty. Section 158 is entitled "Proof of disability, duty and ordinary. " 40 ILCS 5/9-158 (West 2006). The version of section 9-158 that was in effect between February 17, 2009, and July 14, 2016, stated:

       "Proof of duty or ordinary disability shall be furnished to the board by at least one

       licensed and practicing physician appointed by or acceptable to the board, except that this

requirement may be waived by the board for proof of duty disability if the employee has been compensated by the county for such disability or specific loss under the Workers' Compensation Act or Workers' Occupational Diseases Act. The physician requirement may also be waived by the board for ordinary disability maternity claims of up to 8 weeks. With respect to duty disability, satisfactory proof must be provided to the board that the final adjudication of the claim required under subsection (d) of Section 9-159 established that the disability or death resulted from an injury incurred in the performance of an act or acts of duty. The board may require other evidence of disability. Each disabled employee who receives duty or ordinary disability benefit shall be examined at least once a year or a longer period of time as determined by the board, by one or more licensed and practicing physicians appointed by the board. When the disability ceases, the board shall discontinue payment of the benefit." 40 ILCS 5/9-158 (West 2006).

¶ 25    Budlove relies on his own reading of section 9-158 and on *Wilfert v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago*, 318 Ill. App. 3d 507, 518 (2001), and *Hoffman v. Orland Firefighters Pension Board*, 2012 IL App (1st) 112120, ¶¶ 25-26, to support his argument about the Board's burden of proof. However, the employee in *Wilfert* was a Chicago paramedic who was subject to Article 6 of the Pension Code, which concerns the Firemen's Annuity and Benefit Fund in cities having a population exceeding 500,000, 40 ILCS 5/6-101 *et seq*. (West 1996), rather than a sheriff's police officer like Budlove who was subject to Article 9 of the Pension Code, which concerns the fund at issue that was set up for Cook County employees. 40 ILCS 5/9-101 *et seq*. (West 2006). The employee in *Hoffman* was an Orland Park firefighter who was subject to Article 4 of the Pension Code, which concerns the Firefighters' Pension Fund in municipalities

having a population of 500,000 and under. 40 ILCS 5/4-101 (West 2008). Throughout this order we cite many administrative review actions which involve firefighters and other public servants, but we cite these cases only for general principles of law. Budlove, however, indiscriminately mixes and matches various statutes that do not necessarily apply to him. Budlove does not argue that the *Wilfert* or *Hoffman* statutes had the same or even similar wording to the statute that governed his latest benefits application. He simply takes the courts' conclusions out of context.

¶ 26    Article 9, section 9-158, however, squarely place the burden of proof of disability on the applicant. 40 ILCS 5/9-158 (West 2006). The first five sentences of section 9-158 require the applicant to obtain certain medical documentation. They specify that "[p]roof of duty or ordinary disability *shall be furnished to the board*," "satisfactory proof *must be provided to the board*" a benefit recipient "*shall be examined [by a board-appointed physician]* at least once year" or less frequently if the board desires, and that [t]he board *may require* other evidence of disability." *Id*. Nothing in the concluding sentence, particularly in the context of an entire paragraph that burdens the applicant, can be read to obligate the Board with the burden of proof.

¶ 27    Furthermore, the next section of Article 9, section 9-159, which is entitled "When disability benefit not payable," continues the theme of burdening the applicant. 40 ILCS 5/9-159 (West 2006). It makes clear that an applicant has to prove his or her continued qualification for duty disability benefits by submitting to a medical exam. Section 159(a) states: "If an employee receiving duty disability or ordinary disability benefit refuses to submit to examination by a physician appointed by the board, he shall have no further right to receive the benefit." 40 ILCS 5/9-159(a) (West 2006). The last paragraph of section 9-159, paragraph (d), adds a fifth component to the initial application for disability benefits, by requiring the applicant to also apply for worker's

compensation benefits:

> "(d) Before any action may be taken by the board on an application for duty disability benefit or widow's compensation or supplemental benefit, other than rejection of any such application that is otherwise incomplete or untimely, the related applicant must file a timely claim under the Workers' Compensation Act or the Workers' Occupational Diseases Act, as applicable, to establish that the disability or death resulted from an injury incurred in the performance of an act or acts of duty, and the applicant must receive compensation or payment from the claim or the claim must otherwise be finally adjudicated." 40 ILCS 5/9-159(d) (West 2010).

¶ 28    Thus, sections 9-158 and 9-159 obligate the applicant, not the Board, to "furnish" "proof" and "evidence" of a duty disability in order to receive benefits. 40 ILCS 5/9-158, 9-159 (West 2006). The sentence that he relies upon, "When the disability ceases, the board shall discontinue payment of the benefit," authorizes, even mandates, that the Board discontinue payments in the absence of a proven disability. 40 ILCS 5/9-158 (West 2006). The sentence clarifies that the recipient has no ongoing right to benefits. It does not indicate that once the Board has approved duty disability payments for a certain period of time, that the payments must be continued into perpetuity until the Board somehow proves that the recipient has recovered.

¶ 29    Budlove also argues that the Board relied on a discredited policy and that some of the key factual conclusions at the administrative hearing were contrary to the manifest weight of the evidence. His argument is essentially that the Board did not have authority, in light of *Nomellini v. Cook County Employees and Officers Annuity and Benefit Fund*, 2018 IL App (1st) 162594-U,

to award disability benefits for a finite period of time based on his worker's compensation settlement.

¶ 30    *Nomellini* is an unpublished order that was filed in 2018, when Illinois Supreme Court Rule 23(b) mandated that unpublished dispositions are "not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." *Nomellini*, 2018 IL App 162594-U; Ill. S. Ct. R. 23(e) (eff. Jan. 1, 2021). The record indicates that at one point Budlove did argue collateral estoppel, but he is not arguing that legal theory in this appeal.

¶ 31    Even if it were permissible to cite an unpublished order from 2018, this one does not support the appeal. In *Nomellini*, the Board denied an initial duty disability application without conducting a hearing, in part because it misconstrued section 9-159(d) of the Pension Code to require that the disability dates written in a settlement agreement approved by the IWCC also determined the person's duty disability dates. 40 ILCS 5/9-159(d) (West 2010); *Nomellini*, 2018 IL App 162594-U, ¶¶ 38-39. The appellate court reversed, because there was no statutory language that limited or bound the Board to any findings made by the IWCC, and because another section of the code, section 9-156, expressly provided for duty disability benefits " 'during any period' " of disability. 40 ILCS 5/9-156 (West 2010); *Nomellini*, 2018 IL App 162594-U, ¶ 39. The court remanded to the Board for a hearing on the merits. *Id*. ¶ 43.

¶ 32    Budlove, however, already received a hearing on the merits. Furthermore, he is misstating the record when he contends that the Board repeated its error in *Nomellini* when its only rationale for denying Budlove's disability extension application was that the requested time frame exceeded the dates in his worker's compensation settlement. Contrary to Budlove's contention that the Board

utilized the dates in his settlement agreement to arbitrarily deny duty disability benefits, the Board granted benefits for many years after he settled his worker's compensation claim and did not deny his latest reapplication until it determined that he had not demonstrated that it had merit. The worker's compensation settlement covered the years between his duty accident in 2002 and 2006, and then the Board granted his duty disability application and repeated reapplications between 2006 and 2012. His most recent application was denied because it did not indicate a disability that was caused even in part by his duty accident in 2002. A claimant does not have to prove that a duty-related accident is the sole or even primary cause of the claimant's disability, but he or she must prove that the duty-related accident is a causative factor contributing to the disability. *Luchesi v. Retirement Board of Firemen's Annuity & Benefit Fund of Chicago*, 333 Ill. App. 3d 543, 550 (2002). As the claimant in an administrative proceeding, Budlove bore the burden of proof, and the relief that he was requesting was properly denied when he did not sustain his burden. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 505 (2007). The Board expressly based its denial on an "insufficient record to show that [his] current disability was the result of an injury incurred in the performance of duty." According to the hearing officer, Budlove was claiming at the hearing to have been injured at work in 2002, but his 2012 application form indicated he was injured in 2001, his attending physician statement (from Dr. Saleh, M.D.) indicated he was injured in 2008, and his employer verification statement indicated he was injured in 2001. The county-appointed physician's statement (from Dr. J. Mankowski, M.D.), did not specify an injury date, but the doctor's "assessment [of a disability was expressly] based on [the] evaluation of [the] patient and review of (1) form DIS-003 (Attending Physician Statement) and (2) form DIS-0002 (Employer Verification Statement)." Those two forms contained the 2008 and

2001 dates, rather than the date of Budlove's 2002 squad car accident. Thus, not even one of the four components of Budlove's application indicated there was a duty disability. The hearing officer also pointed out Budlove's lack of supportive testimony after his attending physician, Dr. Saleh, disregarded a subpoena to appear and testify. Since the evidence did not show that when Budlove applied for duty disability benefits in 2012, he was experiencing a disability incurred in the performance of an act of duty, the hearing officer's recommended opinion was that Budlove had not met his burden of proof in his appeal from the Board's denial, and that the Board should affirm its decision. The Board adopted the recommendation. In doing so, the Board held Budlove to the burden of proof that is properly placed on an applicant, rather than erroneously denying his claim because the Board misinterpreted a statute as it did in *Nomellini*. Budlove was heard and the decision against him was justified because of his failure to prove that the duty-related accident was at least a causative factor contributing to his disability.

¶ 33    Budlove contends that the county-appointed physician, Dr. J. Mankowski, and his own attending physician, Dr. Saleh, confirmed he "remain[s] permanently disabled" by his duty accident even after the Board has "terminated" duty disability benefits, and that he continues to be incapable of performing full, unrestricted duty as a result of his 2002 work accident. Also, the Board "completely ignored a limited IME that it commissioned in 2016." He also contends that Lewandowski admitted that the Board had no medical evidence showing recovery or any improvement in the condition.

¶ 34    Budlove is misstating the facts. The Board did not "terminate" his duty disability benefits. It followed its practice of awarding Budlove benefits for specific periods of time and granted four of his reapplications. The latest period of benefits lapsed in February 2012, requiring him to submit

the application at issue. Furthermore, he presented no medical evidence of an ongoing *duty* disability. Dr. Saleh did not testify and the hearing officer barred the medical records because Dr. Saleh was not available, despite being subpoenaed to the hearing. Dr. Mankowski's report is not as advantageous as he argues. The evaluation form that Dr. Mankowski's completed on February 29, 2012, included the question, "If patient is still disabled, what date should patient return to work?." In the adjacent space, Dr. Mankowski wrote "TBD" and "permanently disabled per 12/20/2010 letter from Dr. Saleh." We read "TBD" or "to be determined" as uncertainty about Budlove's prognosis. Also, Dr. Mankowski only made note of Dr. Saleh's opinion, rather than stating an independent medical opinion, when writing about the letter that was received from Dr. Saleh. Dr. Mankowski was not opining that Budlove was permanently disabled and indicated that Budlove should next be evaluated about a year later, on January 15, 2013. It is simply incorrect when Budlove states that Dr. Mankowski determined he had a permanent disability. Furthermore, the doctor did not opine that Budlove's disability was caused by the injuries that he suffered in his squad car accident in 2002, that is, the report does not connect Budlove's condition with his duty accident. Even if there was a disability, Budlove needed to show that his duty-related accident was a causative factor contributing to the disability, *Luchesi*, 333 Ill. App. 3d at 550 (2002), and Dr. Mankowski's statement alone does not establish this critical fact. The hearing officer did not refer to a "limited IME that [was] commissioned in 2016," but was not required to discuss every exhibit. Furthermore, Dr. Figuero did not conclude that Budlove was disabled and suggested that a functional capacity examination would be helpful in clarifying whether he could perform the essential functions of a police officer. The record lacks medical evidence that Budlove was disabled in 2012 by his duty accident in 2002. Budlove accurately summarizes Lewandowski's

testimony that he was not aware of any medical evidence indicating Budlove could return to full, unrestricted duties as a sheriff's police officer. We add that LeDonne also acknowledged that he did not have evidence that the duty disability had ceased. However, LeDonne also said that he was not looking for evidence of recovery, instead he was looking for proof of eligibility, and as we discussed above, Budlove, the applicant, bore that burden.

¶ 35    Budlove contends the Board further erred by summarily concluding that he failed to comply with procedural requirements. He cites page 17 of the hearing officer's recommendation to the Board. He argues "Indeed, the record contradicts this conclusion." On page 17, the hearing officer listed the four components of Budlove's duty disability application dated February 20, 2012, which included "a) an instruction and application form; b) an employer verification form; c) an attending physician statement; and d) a County physician statement of disability." The hearing officer did not indicate that any of the four components were missing. Instead, the hearing officer went on to accurately discuss the fact that the injury dates in these various documents were not consistent.

¶ 36    Budlove also contends that the Board's conclusion that he "failed to establish the ongoing nature of his disability through credible evidence *** was likewise contradicted by the long-term treatment history documented by Dr. Saleh." We reiterate that Dr. Saleh did not respond to a subpoena to the administrative hearing and was not available to provide a foundation for any purported medical records.

¶ 37    Budlove's last contention about the manifest weight of the evidence is that the Board found that he did not appear for required medical evaluations or provide sufficient cooperation. Budlove again cites page 17 of the hearing officer's recommendation. We reiterate that on this page, the

hearing officer described the four documents that comprised Budlove's 2012 application and then discussed the contents of those documents. The hearing officer did not indicate that Budlove did not submit to medical evaluations or otherwise cooperate.

¶ 38  We reject outright Budlove's claim that the Board's findings were against the manifest weight of the evidence or justify reinstatement of his duty disability benefits. The record discloses discrepancies in the injury dates in Budlove's 2012 application form, employer verification form, attending physician's statement, and board-appointed physician's statement. The hearing officer determined that the documentary evidence and witness testimony in the record did not support Budlove's assertion that his purported disability was incurred in 2002 during the performance of an act of duty. This conclusion was not against the manifest weight of the evidence. The Board accepted and adopted the hearing officer's recommendation to deny the application.

¶ 39  Budlove's next main contention concerns the due process claim he set out as Count II of his complaint for administrative review. Budlove argues that the Board violated his due process rights when it 1) terminated his duty disability benefits "without a medical examination, without a hearing, without notice, and without any physician's finding that Plaintiff had recovered from his injury," 2) "reversed" the burden of proof to him, 3) conducted an adversarial hearing, 4) excluded its own IME; and 5) selectively applied evidentiary standards.

¶ 40  Above, we addressed Budlove's first, second, and fourth contentions. He did not establish that the Board bore the burden of proving an applicant's recovery, improperly shifted the burden of proof to an applicant, or improperly excluded an IME. To be clear, the IME was not excluded. It was one of the joint, stipulated exhibits. The hearsay objection that Budlove now refers to was to his own testimony about the IME's contents when the document could speak for itself.

¶ 41    Budlove's third due process contention is that the hearing officer, William Motto, was the Board's own attorney and that three other "Board-affiliated attorneys" "prosecute[d] the case against" him. He contends that the three "prosecutors" took a distinctly adversarial stance by filing pre-hearing memos and opposing continuation, conducting aggressive cross-examinations, objecting to medical records and testimony, and delivering a closing argument urging denial. Budlove argues that any "meaningful distinction" between neutral adjudication and prosecution collapsed. He likens this administrative hearing to the one in *Williams v. Board of Trustees of Morton Grove Firefighters' Pension Fund*, 398 Ill. App. 3d 680 (2010), in which the village's attorney was also a board trustee and actively participated in an adversarial capacity by questioning witnesses and objecting to evidence while also deliberating and voting on the outcome of the same hearing. Budlove states that the hearing officer "consistently ruled in favor of the Board's prosecutorial team, adopted a partisan stance rather than serving as a neutral arbitrator" and "excluded nearly all of Plaintiff's evidence while sustaining nearly all of the Board's objections.

¶ 42    "Due process requires a fair trial before a fair tribunal and applies to both courts and administrative agencies performing adjudicatory functions." *Dombrowski v. City of Chicago*, 363 Ill. App. 3d 420, 426 (2005). We have "a duty to examine the procedural methods that were employed at [the] administrative hearing to ensure that it was a fair and impartial hearing." *Id*. Instead of being a partisan event "with the agency on one side arrayed against the individual on the other," an administrative hearing should be an investigation intended to ascertain and make findings of fact. *Abrahamson*, 153 Ill. 2d at 94. Due process occurs in an administrative hearing when the parties are given the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence. *Id*. at 95. There is a presumption that

administrative officials are objective and capable of fair judging. *Turcol v. Pension Board of Trustees of Matteson Police Pension Fund*, 359 Ill. App. 3d 795, 804 (2005); *Abrahamson*, 153 Ill. 2d at 95 (administrative officials are assumed to have "conscience and intellectual discipline" and be capable of judging a particular controversy fairly). To establish bias, the claimant must prove that to some extent the facts and law had been adjudged in advance of the hearing. *Turcol,* 359 Ill. App. 3d at 804. There must be more than "the mere possibility of bias or that the decisionmaker is familiar with the facts of the case." *Danko v. Board of Trustees of City of Harvey Pension Board*, 240 Ill. App. 3d 633, 641 (1992). The claimant must show prejudice in the proceeding. *Id*.

¶ 43    The Board distinguishes *Williams*, 398 Ill. App. 3d 680. The Board also responds that two assistant state's attorneys have represented the Board in these proceedings, in accordance with section 9-217 of the Pension Code, which specifies "Attorney. The chief legal officer of the county shall be the legal advisor of and attorney for the board." 40 ILCS 5/9-217 (West 2020). The record and briefs do not indicate whether the third attorney was also an assistant state's attorney or an attorney in private practice. There is no indication that any of these attorneys are also members of the Board like the attorney who had a dual role in *Williams*.

¶ 44    Budlove does not contend that any of the hearing officer's rulings were incorrect, only that they were unfavorable. Furthermore, he provides no specifics. It is not enough for Budlove to make conclusory accusations of bias, he must show that there was prejudice in the proceeding. *Danko*, 240 Ill. App. 3d at 641. His conclusory characterization does not overcome the presumption that the hearing officer was impartial, objective and a fair judge of the controversy. *Turcol*, 359 Ill. App. 3d at 804; *Abrahamson*, 153 Ill. 2d at 95. Our review of the record substantiates that,

consistent with his due process rights, Budlove was given an opportunity to be heard, received impartiality in rulings on the evidence, and was able to cross-examine the Fund's employees Lewandowski, LeDonne, and D'Amato.

¶ 45    Budlove's fifth due process argument is that the Board selectively applied evidentiary standards to his evidence, by refusing to allow his attending physician to testify remotely and by excluding the medical records when the doctor was not available to authenticate them. The doctor did not respond to a subpoena.

¶ 46    Budlove has forfeited his argument about remote testimony by failing to cite the pages in the record that contain this ruling. He cites a transcript in which counsel "renews" a request to allow Dr. Saleh to testify remotely and the hearing officer responds, "That request is denied as I indicated over a week ago." Budlove does not cite the ruling from "over a week ago." His presentation does not comply with Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which requires that the appellant's brief contains citations to "the pages of the record relied on." He has forfeited our review. *Cabrera v. First National Bank of Wheaton*, 324 Ill. App. 3d 85, 93 (2001) (finding argument that was not supported with record citation was forfeited). Furthermore, since we do not know why the hearing officer denied the remote testimony request and expected Dr. Saleh's presence, we cannot address whether the decision to also exclude the medical records was unfair. The argument about Dr. Saleh's records is forfeited. *Id*.

¶ 47    Budlove's last contention concerns Count III, in which he set out breach of fiduciary duty allegations. The Board responds that Budlove forfeited review of Count III by failing to replead it following its dismissal without prejudice on November 23, 2021, and additionally by failing to list the dismissal order in his notice of appeal. Budlove's notice of appeal on November 22, 2024,

states in its entirety:

> "Now comes the Plaintiff, SCOTT BUDLOVE, by and through his attorneys, Thomas
> S. Radja Jr. of Radja Collins Law, and Steven Calcaterra, Esq.     [*(sic)*] appeal [*(sic)*] the
> May 1, 2024, and October 28, 2024 Court Orders of the Circuit Court of Cook County (a
> copy of which is attached hereto) in this cause, which Affirmed the Defendant Board's
> decision to deny duty disability benefits to Plaintiff.
>
> Plaintiff, SCOTT BUDLOVE, requests that the Appellate Court reverse the Circuit
> Court's decision in its entirety and find in favor of Plaintiff reversing the decision of the
> Pension Board."

¶ 48    We cannot review the disposition of Count III for two separate reasons. First, Budlove abandoned the claim in the circuit court. He failed to replead Count III within the 28 days that the court granted to him in 2021, then he proceeded to address the merits of Counts I and II in 2024 without seeking any additional order about Count III. Three years passed between the first order and the last order. His silence did not preserve Count III. There were no breach of fiduciary duty allegations pending when the court entered the last order and specified "Case disposed." *Bank of America, N.A. v. Basile*, 2014 IL App (3d) 130204, ¶ 25, 20 N.E.3d 438, 444 (circumstances indicated that failure to replead affirmative defenses was a "knowing and intelligent waiver" of those affirmative defenses and that they were withdrawn). See also *Larkin v. Sanelli*, 213 Ill. App. 3d 597, 602 (1991) (when an amendment does not refer to or adopt the prior pleading, the earlier pleading is in effect abandoned and withdrawn). Furthermore, we lack jurisdiction to review the disposition of Count III because Budlove did not include it in his notice of appeal. *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 22 (appellate jurisdiction extends only to judgments that are

identified in the notice of appeal as liberally construed).

¶ 49    For the reasons discussed above, we affirm the Board's ruling as to Budlove's duty disability application and we affirm the circuit court's ruling as to Budlove's due process claims.

¶ 50    Affirmed.